UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA WASHINGTON-
WHEELER,

       Plaintiff,                       CIVIL ACTION NO. 08-14960

       v.                              DISTRICT JUDGE ANNA DIGGS TAYLOR

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

      *A.    Proceedings in this Court*

On November 28, 2008, Plaintiff Brenda Washington-Wheeler (Plaintiff) filed the instant suit (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income benefits (Dkts. 3, 25). This matter is currently before the Court on cross-motions for summary judgment (Dkts. 19, 23).

      *B.    Administrative Proceedings*

Plaintiff filed the instant claims on December 21, 2004, alleging that she became unable to work on October 1, 2001 (Tr. 107-109). The claim was initially disapproved by the

Commissioner on March 29, 2005 (Tr. 47). Plaintiff requested a hearing and, on June 13, 2007,[1] Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Kathryn D. Burgchardt, who considered the case *de novo*. In a decision dated July 24, 2007, the ALJ found that Plaintiff was not disabled (Tr. 11-22). Plaintiff requested a review of this decision on September 7, 2007 (Tr. 350). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[2] (AC-1-2, Tr. 335-361), the Appeals Council, on September 26, 2008, denied Plaintiff's request for review. (Tr. 5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

---

[1] There were actually three hearings in this case. A hearing was initially scheduled for February 17, 2007 but Plaintiff did not appear. A hearing on April 4, 2007 was rescheduled when the Plaintiff's attorney requested more time for extensive questioning. The third and final hearing was held on June 13, 2007 (Tr. 14).

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**II.     STATEMENT OF FACTS**

*A.     ALJ Findings*

Plaintiff was 46 years of age at the time of the most recent administrative hearing (Tr. 16). She graduated from high school, completed three years of college and performed various jobs in the past including work as an office clerk (Tr. 16 82, 115, 124, 385).

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since October 1, 2001 – Plaintiff's alleged disability onset date (Tr. 16). At step two, the ALJ found that Plaintiff had the following "severe" impairments: obesity, fibromyalgia, scleritis, left shoulder pain, hypertension, arthritis, a history of gastroesophageal reflux disease, a history of allergic dermatitis, a history of right submandibular abscess and depression. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.*

Between steps three and four, the ALJ found that Plaintiff possessed the "residual functional capacity [RFC] to perform a limited range of non-production oriented, simple, unskilled light work activity with one, two, or three step instructions. Plaintiff can lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, stand/and or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, sit (with normal breaks) for a total of 6 hours in an 8-hour workday, and may use a cane that was prescribed in January of 2007 to ambulate. Plaintiff can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions. Plaintiff can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching with only occasional fine manipulation with the left non-dominant hand. Plaintiff should be restricted to a

"relatively clean" work environment with low levels of pollutants.  Plaintiff can occasionally climb, balance, stoop, crouch, kneel, or crawl.  Plaintiff should avoid overhead lifting bilaterally. (Tr. 17-18)

At step four, the ALJ found that Plaintiff could not perform her previous work as an office clerk, as this work exceeded Plaintiff's RFC.  *Id.*  At step five, the ALJ denied Plaintiff benefits, finding that she could perform a significant number of jobs available in the national economy (Tr. 21-22).  Specifically, the ALJ found (based on the testimony of vocational experts) that Plaintiff could perform such representative jobs as: visual inspector (2,500 regional jobs) and hand packager (5,750 regional jobs).  *Id.*

### B.     *Administrative Record*

#### 1.     **Plaintiff's Testimony and Statements**

Plaintiff claimed she was unable to work due to various conditions including fibromyalgia, depression, shoulder pain, and asthma (Tr. 375-76, 417).  Plaintiff described lying down twice a day for thirty to sixty minutes to take medicine using a breathing machine (Tr, 392, 417).  She also said that she was limited in her ability to lift her non-dominant left arm, and grasp and manipulate with that hand (Tr. 393-94, 418).  At her second hearing, Plaintiff described developing problems in her right hand as well (Tr. 418-19).  She said her face swelled around her eyes and was painful due to scleritis and cellulitis, for which she took several medications (Tr. 395-98, 401, 423).  Plaintiff also described experiencing depression and panic attacks (Tr. 402).  She described blurred vision, and said her knees locked up on her (Tr. 421).

Plaintiff said she could sit for thirty to forty minutes, but could stand for only half as long and could walk no more than one-half block (Tr. 376-77).  Plaintiff testified that she used a cane

to avoid falling (Tr. 377) and was unable to lift a gallon of milk (Tr. 378). She described engaging in very limited daily activities (Tr. 378-81, 388-90, 425-27).

### 2. Medical Evidence

In February 2002, Dr. Stanley Frencher opined that Plaintiff was limited to sedentary-level activity due to abnormal uterine bleeding, pelvic pain, uterine fibroid, anemia, and sinusitis (Tr. 228-29). In early 2003, Plaintiff sought treatment for eye pain related to scleritis, which improved in response to an injection (Tr. 127-32, 309-12). In September 2003, Plaintiff again sought treatment for eye pain (Tr. 125-26). She had no changes in her vision, and had not taken any medications over the previous four months. (*Id.*). The record documents treatment for eye complaints through 2006 (Tr. 316-22).

In October 2003, Plaintiff sought treatment for possible connective tissue disease; Dr. Josephine Dhar reported only minimal findings (Tr. 133). Plaintiff underwent a consultative examination in February 2004, at which time she complained of pain in her shoulders, hands, knees, and back (Tr. 144-48). Plaintiff exhibited some limited ranges of motion in her shoulders, lumbar spine, and knees, and decreased grip bilaterally. She walked with a normal, unassisted gait. (*Id.*). An MRI of Plaintiff's left shoulder revealed tenosynovitis and degenerative arthritis (Tr. 231).

A state agency physician reviewed the evidence of record and concluded that Plaintiff could perform light-level work subject to postural and manipulative limitations (Tr. 152-59). Plaintiff was again examined in March 2005, at which time she alleged fibromyalgia and vision problems (Tr. 196-202). Dr. Dang Vu reported a limited range of motion in her left shoulder, but no other gross limitations upon physical examination. (*Id.*). A second state agency

physician reviewed the medical evidence in March 2005, and concluded that Plaintiff could perform light-level work subject to postural limitations (Tr. 205-12).

In January 2007, Plaintiff was prescribed a cane for walking and a breathing machine (Tr. 236, 278-79). In March 2007, Plaintiff was treated for generalized joint pain, most severe in her left shoulder (Tr. 282). Plaintiff underwent psychological evaluation in March 2004 (Tr. 160-63). Dr. F. Qadir diagnosed adjustment disorder and assigned Plaintiff a Global Assessment of Functioning ("GAF") rating of 50 to 55.[3] (*Id.*).

Psychiatrist Dr. Eva Ettedgui reviewed the evidence of record in April 2004, and concluded that Plaintiff was moderately limited with respect to her ability to understand and carry out detailed instructions, maintain attention and concentration for extended periods, make work-related decisions, complete a workday or workweek without interruption from psychologically-based symptoms, interact appropriately with the general public, and independently set realistic plans (Tr. 168-85). He determined that Plaintiff could perform simple work tasks in a low stress environment on a sustained basis. (*Id.*).

Plaintiff attended three counseling appointments from August 2006 through March 2007 (Tr. 286-300). She was diagnosed with major depressive disorder, and assigned a GAF of 55.

---

[3]The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g*., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

Plaintiff reported that in the past, her emotional condition had improved greatly in response to medication. *Id.*

### 3. Vocational Expert

The ALJ asked Harry Cynova, the vocational expert ("VE") at Plaintiff's April 2007 administrative hearing, whether Plaintiff could perform simple, unskilled, non-production oriented, light-level jobs involving no more than one to three-step instructions, that would allow Plaintiff to use a cane while walking, involved no more than occasional fine manipulation with her nondominant left hand, were performed in a relatively clean environment with low levels of environmental pollutants, did not require overhead lifting, and did not require more than occasional climbing, balancing, stooping, crouching, kneeling, or crawling (Tr. 404). Mr. Cynova testified that such an individual could perform a significant number of unskilled sedentary-level jobs in the regional economy, including work as a visual inspector or hand packager (Tr. 405). Furthermore, Mr. Cynova testified that if Plaintiff were limited to sedentary-level work with similar restrictions, she could nevertheless perform a significant number of inspection and hand packaging jobs (Tr. 405-06). Mr. Cynova testified that his testimony was consistent with information in the Dictionary of Occupational Titles ("DOT") (Tr. 406).

John Stokes, the VE at Plaintiff's June 2007 hearing, concurred with the previous VE's testimony, that an individual with the limitations described in the ALJ's hypothetical question could perform a significant number of jobs in the regional economy (Tr. 434). Mr. Stokes testified that if Plaintiff were limited to sedentary work, she could nevertheless perform a significant number of jobs (Tr. 435-36).

## III.  DISCUSSION

### A.  *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required

to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the

Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including DIB benefits of Title II (42 U.S.C. §§ 401 *et seq.*) and SSI benefits of Title XVI (42 U.S.C. §§ 1381 *et seq.*). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and

considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

On appeal, Plaintiff argues primarily that the hypothetical question posed to the vocational expert (VE) was inadequate. In particular, Plaintiff avers that the hypothetical failed to accurately portray Plaintiff's impairments, such as Plaintiff's need to use a "breathing machine" and her need to frequently administer eye-drops throughout the day (which cause eye burning and blurry vision).

Where an ALJ poses a hypothetical question to a vocational expert (VE) that fully and accurately incorporates a claimant's physical and mental limitations, the expert's testimony in response thereto constitutes substantial evidence to support a finding that the claimant is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the expert's testimony cannot support such a finding.

However, a hypothetical question is not required to list all the claimant's medical conditions, but is only required to reflect the claimant's <u>limitations</u>. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that Plaintiff's was not fully credible and that the objective medical evidence did not support all of Plaintiff's claimed limitations. The undersigned finds no error in the hypothetical question posed by the ALJ. An ALJ's credibility determination is to be given "great weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

The ALJ based her findings, in part, on that fact that she did not find Plaintiff's testimony entirely credible. In particular, the ALJ noted that Plaintiff was not diligent in following up with appointments: "In 2004 [Plaintiff] either missed or left prior to being seen by the attending physician for 4 of her 5 scheduled appointments.... If [Plaintiff] were having the level of functional limitations as alleged, one would expect her to have pursued consistent treatment during the time period in question; [Plaintiff's] failure to attend scheduled appointments are inconsistent with her complaints of functional limitations." (Tr. 19) Thus, Defendant correctly points out that – although Plaintiff has alleged a number of physical and mental impairments – the record documents that she has received somewhat sporadic treatment for these various conditions. It was reasonable for the ALJ to find Plaintiff's sporadic treatment history inconsistent with the disabling degree of impairment she alleged.

Plaintiff replies that her sporadic treatment records can be attributed to her limited economic means and homelessness. While Plaintiff's economic situation undoubtedly influenced her course of treatment, she has not shown that any economic barrier prevented her from receiving treatment at government facilities. Rather, the record shows that Plaintiff was able to obtain treatment at those facilities when she felt it necessary.

Plaintiff further contends the ALJ erred by not finding her subject to moderate limitations resulting from her emotional conditions, as suggested by a psychiatrist who reviewed the record in April 2004. The reviewing psychiatrist specified, nevertheless, that Plaintiff could understand and carry out simple instructions and could perform simple work tasks in a low-stress environment on a sustained basis (Tr. 185). Thus, the findings of the ALJ do not appear to conflict with the state agency psychiatrist.

Moreover, Plaintiff has not identified any evidence to suggest that she continued to experience the limitations described by the reviewing psychiatrist in April 2004 for a continuous twelve-month period relevant to her December 2004 application. After April 2004, the record is devoid of reports from any mental health professional until August 2006 when Plaintiff attended her first of three counseling sessions (Tr. 286-300). It thus appears that the ALJ reasonably concluded that Plaintiff could perform the mental and emotional requirements of simple, unskilled, non-production oriented jobs involving no more than one to three-step instructions.

Finally, Plaintiff contends the ALJ failed to comply with Social Security Ruling 00-4p by not asking the Vocational Expert (VE) if his testimony was consistent with Dictionary of Occupational Titles (DOT). *See* Plaintiff's Brief at 25-26. Despite Plaintiff's argument to the contrary, the ALJ satisfied her obligation under SSR 00-4p by asking the VE about any apparent discrepancies between the information provided by the DOT and that which the VE presented. Since the ALJ asked the VE about potential conflicts between the VE's views and the DOT, and the VE testifies that no such conflict exists, the ALJ has no duty under SSR 00-4p to interrogate any further. *Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 606 (6th Cir. 2009).

In sum, after review of the record, it appears that the decision of the ALJ is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                S/Mark A. Randon  
                                                Mark A. Randon  
                                                United States Magistrate Judge

Dated: December 23, 2009

## Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 23, 2009, by electronic and/or ordinary mail.

                                                S/Barbara M. Radke  
                                                Judicial Assistant